IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID MICHAEL MONTGOMERY, #412-797, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. ELH-14-681 |
| MARYLAND CORRECTIONAL TRAINING CENTER, *et al.,* | * | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**RESPONSE TO ORDER TO SHOW CAUSE**

The Office of the Attorney General, by its attorneys, Douglas F. Gansler, Attorney General of Maryland and Stephanie Lane-Weber, Assistant Attorney General, responds to this Court's Order to Show Cause and states as follows:

**INTRODUCTION**

Plaintiff, David Michael Montgomery, #412-797, an inmate currently incarcerated at the Maryland Correctional Training Center (MCTC), has asked the Court to order that he be housed in a single cell. He claims that due to his crimes and his past, prison gangs may want to harm him. He claims that his cell mate is a gang member. This Court should deny Plaintiff's request for reasons which follow.

**FACTUAL BACKGROUND**

Lieutenant C.J. Conley is MCTC's Intelligence Officer, responsible for investigating security concerns pertaining to inmates, officers, institutional staff and the public. *See* Exhibit A, Declaration Lt. C.J. Conley, ¶ 2. Pursuant to the Court's Order to Show Cause, Lt. Conley investigated Plaintiff's personal safety issues and prepared a Memorandum for MCTC's Warden, J. Philip Morgan. *Id.,* page

2. Plaintiff arrived at MCTC on May 1, 2013. As a precaution - Plaintiff is a validated member of DMI (Dead Men Incorporated) - he was placed on administrative segregation pending an investigation of an Enemy Alert on his OBSCIS enemy screen. *Id.; see also* Exhibit B, Records Declaration of Mary Vann, pages 4-6. Under a previous DOC number, Plaintiff had an enemy named Scott Bartlett, a DMI elder, placed on his enemy screen on April 15, 2009. Exhibit A, page 2; Exhibit B, page 13. Inmate Bartlett had been released from DPSCS custody on July 23, 2009. *Id.*

Captain Woods and the Case Management Segregation Team met with Plaintiff on May 7, 2013. Plaintiff requested removal from protective custody, stating he did not believe he was in any danger. Exhibit A, page 2; Exhibit B, page 8. He signed a protective custody waiver form, stating, "I do not fear for my safety." The form was witnessed by Lt. M. Clopper, Manager of Housing Unit 5, and HU 5 staff. *Id.* On May 9, 2013, Plaintiff was removed from administrative segregation and placed into general population. Exhibit A, page 2.

On February 12, 2014, Plaintiff was interviewed by Craig Leonard, his case manager. *Id.* Plaintiff told Mr. Leonard that he gave information about a weapon hidden in his cell by his cell partner at the time, Travonte Johnson, an active Blood member. *Id.* The inmates were housed in Housing Unit 7, cell 7A-1-23. *Id.* During this interview, Plaintiff again signed a protective custody waiver, witnessed by case managers Leonard and Holly Fratz, stating he had been offered protective custody but did not feel himself in danger. *Id.*; Exhibit B, page 9. Staff on the 4-12 shift conducted a search of Plaintiff's cell that night and recovered a home-made weapon. Per protocol, both inmates were placed on administrative segregation in Housing Unit 5 pending adjustment. Exhibit A, page 2. Plaintiff was assigned to cell 5B-1-14. *Id.*

A week later, on February 19, Plaintiff and his cell mate in 5B-1-14, James Kline, an active DMI member, were searched by staff. *Id.,* page 3. Five homemade weapons were discovered in their cell and confiscated. Both inmates remained in the cell after the search. Id.

On February 25 an adjustment hearing was held for the infractions arising from the discovery of the weapon in the cell Plaintiff had shared with inmate Johnson. Neither inmate claimed responsibility for the weapon. Plaintiff was sanctioned with 45 days of segregation, 180 days' loss of visits, and revocation of 30 good conduct credits. *Id.;* Exhibit B, pages 18-34.

On the same day, inmate Kline accepted responsibility for the five weapons discovered in the cell he shared with Plaintiff. Therefore, Plaintiff was found not guilty of the adjustment written on February 19. Exhibit A, page 2; Exhibit B, pages 35-42.

On March 24, at the Warden's direction, Lt. Conley interviewed Plaintiff about his allegations that he feared for his safety, that gangs are after him because of his past crimes, and why he felt he needed a single cell in Housing Unit 5. *Id.* Plaintiff claimed to Lt. Conley that he should be placed in a single cell because he believed several letters he wrote to his case manager, informing him of the weapon in Housing Unit 7, may have been "knocked off" and read by another inmate. Exhibit A, page 3.

Plaintiff still shares a cell with James Kline, a DMI member. During the interview with Lt. Conley, Plaintiff stated that he has no problems with inmate Kline. *Id.* Again, he signed a protective custody waiver form, marking the block that states, "I have been offered Protective Custody. I do not believe that I am in danger of harm from another inmate." *Id.* Plaintiff wrote, "I don't fear for my life," and signed the form, witnessed by Lt. Conley and Sgt. T. Ricker. *Id.*; Exhibit B, page 10.

3

Lt. Conley, having learned from Plaintiff that he sees Dr. Rohrer of the Psychology Department and is on medication, arranged for Plaintiff to be seen and interviewed by the Psychology Department the same day. Exhibit A, page 3.

**ARGUMENT**

"A preliminary injunction is an extraordinary remedy never awarded as a right" *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 376 (2008). Because it is an extraordinary remedy, injunctive relief can only be awarded upon "a clear showing" that the plaintiff is entitled to such relief. *Winter*, 129 S.Ct. at 378-77. The Supreme Court has provided four requirements that a plaintiff must establish in order to obtain a preliminary injunction: (1) that he is likely to succeed on the merits at trial; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter,* 129 S.Ct. at 346-347 (2008); *see also The Real Truth About Obama, Inc. v. Federal Election Com'n*, 575 F.3d 342, 345 (4th Cir. 2009), vacated on other grounds, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam) (adopting the requirements of *Winter* and overruling *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir.1977)).

All four of the *Winter* requirements must be established independently. *See The Real Truth About Obama, Inc.*, 545 F.3d at 346. The establishment of one or two of these factors does not "relax" the remaining requirements; there is no longer a "flexible interplay" among the four factors. *Id.* at 347. Thus, a plaintiff seeking a preliminary injunction must always "demonstrate that irreparable injury is *likely* in the absence of an injunction" even if he has established a likelihood of succeeding on the merits *Winter*, 129 S.Ct. at 375 (emphasis in original).

Both the Supreme Court and Fourth Circuit have emphasized that courts must consider the public interest impact of preliminary injunctions. "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Winter*, 129 S.Ct. at 376-77 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); *The Real Truth About Obama, Inc.*, 545 F.3d at 347. Indeed, in *Winter*, the Supreme Court reversed the Ninth Circuit because it had "understated" the public interest burden that would occur if a preliminary injunction is granted. *Winter*, 129 S.Ct. at 377.

Plaintiff is not entitled to the injunctive relief he seeks.

First, Plaintiff is not likely to succeed on the merits of this motion. His claim to be in danger has been investigated and does not appear to be based on anything of substance. Rather, Plaintiff based his request for a single cell to Lt. Conley on a mere possibility that some unknown inmate *may* have intercepted and read letters. But Plaintiff did not provide a single name or point to any particular group that may have targeted him. He did not even claim to have received a threat. To the contrary, he stated that he has no problems with his cell mate and on several occasions has specifically declined protective custody, stating that he does not believe himself to be in danger.

Second, there is no indication that Plaintiff has sustained any physical harm in the entire time he has been housed at MCTC, from any of the cell mates with whom he has shared a cell, or any other prisoner there, gang-affiliated or not. Nor is there any indication that he is likely to sustain such harm.

Third, the balance of equities does not favor Plaintiff. If he were assigned to a single cell on the basis of an insubstantial and probably imaginary fear, another inmate who really faces the possibility of harm and needs to be single-celled might be deprived of it.

Finally, the citizens of Maryland have an interest in having the day-to-day administration of the state's prisons left in the hands of the experienced and capable people hired for the purpose, who have found no reason for Plaintiff to require the protection afforded by a single cell assignment.

## CONCLUSION

Given the facts presented herein, the Office of the Attorney General respectfully requests that this Court deny Plaintiff's request for injunctive relief.

        Respectfully submitted,

        DOUGLAS F. GANSLER
        Attorney General of Maryland

        _____/s/_____
        STEPHANIE LANE-WEBER
        Assistant Attorney General
        Federal Bar No. 00023

        St. Paul Plaza - 19th Floor
        200 St. Paul Place
        Baltimore, Maryland  21202
        (410) 576-6340 (Telephone)
        (410) 576-6880 (Telefax)
        E-mail: slaneweber@oag.state.md.us

        Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of April, 2014, a copy of the foregoing Response to Order to Show Cause was mailed, postage prepaid, to:

David Michael Montgomery, #412-797
Maryland Correctional Training Center
18800 Roxbury Road
Hagerstown, Maryland 21746        _____/s/_____
        STEPHANIE LANE-WEBER
        Assistant Attorney General