**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DAVID MICHAEL MONTGOMERY,     *
#412-797                          *
                                 *
Plaintiff,                    *
                                 *
v                         *        Civil Action No.  ELH-14-681
                                 *
MARYLAND CORRECTIONAL     *
  TRAINING CENTER, et al.       *
                                 *
Defendants.                 *
                               ***

**MEMORANDUM**

The self-represented plaintiff, David Michael Montgomery, filed a complaint in which he alleged that he was in danger at the Maryland Correctional Training Center ("MCTC").  Plaintiff named as defendants the MCTC, Warden J.P. Morgan, Sergeant T. Richer, and all "AM and PM officers that work Housing Unit #5B since 2/20/14."  Thereafter, I ordered an expedited response as to why plaintiff's request for  injunctive relief should not be granted.  (*See* ECF 3).[1]  The Response to Order to Show Cause (ECF 10), accompanied by affidavits and other documentary evidence, was construed as a motion for summary judgment, and Montgomery was informed that he was entitled to file a reply with supporting materials. (ECF 11, ECF 12).  Montgomery filed correspondence in reply. (ECF 16, ECF 17).   Subsequently, a status report on Montgomery's safety and housing placement was filed pursuant to court order. (ECF 18, ECF 23).

After careful consideration of the emergency response, status report, and Montgomery's replies as set forth in his correspondence (ECF 16-17, 19-21), the court concludes that

---

[1] On March 11, 2014, the court ordered the finance office at MCTC to provide a copy of Montgomery's prisoner account statement in order to assist in assessing plaintiff's motion to proceed in forma pauperis (ECF 2, ECF 4).  The account has yet to be filed by the facility. Nevertheless, Montgomery's motion to proceed in forma pauperis will be granted.

emergency injunctive relief is unwarranted and that defendants are entitled to summary judgment in their favor.

## BACKGROUND

Montgomery is currently an inmate at the Roxbury Correctional Institution ("RCI").  He filed this complaint while housed at MCTC, claiming that he is in danger of harm from prison gang members based on past incidents,[2] his cell mate at MCTC is a gang member, and he needs to be assigned to a single cell for his safety.  In addition, he alleged that he has asked for protective housing at MCTC, but received no response from correctional officials. (Complaint, ECF 1 at 3-4). Notably, Montgomery did not allege that he has suffered any physical injury as a result of his housing assignment. As relief, he requests $10,000 damages based on his "tort" claim and also requests assignment to a single cell. (*Id.* at 7).

Counsel for the Maryland Attorney General has submitted the Declaration of MCTC's Intelligence Officer, Lieutenant C.J. Conley (Ex. A, ECF 10-1), as well as verified prison records (Ex. B, ECF 10-2).  In his Declaration, Conley avers that Montgomery, who is a validated member of the gang Dead Man Incorporated ("DMI"), was placed on administrative segregation upon his arrival at MCTC on May 1, 2013, pending investigation of any known enemies at the facility.  One enemy was shown, and that inmate was released from custody in 2009.  (ECF 10-1 at 2; ECF 10-2 at 13).

Conley attests that on May 7, 2013, Montgomery asked to be removed from protective custody and stated that he did not believe he was in danger.  (ECF 10-1 at 2; ECF 10-2 at 8). Montgomery signed a protective custody waiver form, stating: "I do not fear for my safety."  The

---

[2] In subsequent correspondence, Montgomery states that he was seriously injured in 2008 and 2009 in gang-related attacks.  (ECF 19-21).

form was witnessed by Lt. M. Clopper, Manager of Housing Unit 5, and HU 5 staff. *Id.* On May 9, 2013, Montgomery was placed into general population. (ECF 10-1 at 2).

On February 12, 2014, Montgomery provided information to case manager Craig Leonard about the weapon hidden by his cell partner, Travonte Johnson, an active member of the Blood gang, in their cell, #7A-1-23. *Id.* Montgomery again signed a protective custody waiver, which was witnessed by case managers Leonard and Holly Fratz. (*Id.*; ECF 10-2 at 9). Staff on the 4-12 shift searched Montgomery's cell that night and discovered a home-made weapon. "As protocol both inmates were placed on Administrative Segregation Pending Adjustment." (ECF 10-1 at 2). Plaintiff was placed in segregation cell # 5B-1-14. (*Id.*).

One week later, on February 19, 2014, Montgomery and his cell mate in # 5B-1-14, James Kline, an active DMI member, were searched by staff. (*Id.* at 3). Five homemade weapons were discovered in their cell and confiscated. Both inmates remained in the cell after the search. *Id.*

On February 25, 2014, an adjustment hearing was held for the infractions arising from the discovery of the weapon in the cell Montgomery had shared with inmate Johnson. Neither inmate claimed responsibility for the weapon, and Montgomery was sanctioned with 45 days of segregation, 180 days' loss of visits, and revocation of 30 good conduct credits. (ECF 10-1 at 2; ECF 10-2 at 18-34). On the same day, Kline accepted responsibility for the five weapons discovered in the cell he shared with Montgomery. Montgomery was found not guilty of the adjustment written on February 19, 2014. (ECF 10-1 at 2; ECF 10-2 at 35-42).

At the Warden's direction, Lt. Conley interviewed Montgomery on March 24, 2014, concerning the claims set forth in his complaint. Montgomery informed Conley that he needed

the protection of a single cell because several letters he had written to his case manager, informing him of the weapon in Housing Unit 7, may have been "knocked off" and read by another inmate. (ECF 10-1 at 3). Montgomery stated he had no problems with Kline, his cell mate. (*Id.*) Furthermore, Montgomery waived protective custody by marking the block in the waiver form which states, "I have been offered Protective Custody. I do not believe that I am in danger of harm from another inmate." *(Id.)* Conley and Sgt. T. Ricker witnessed Montgomery sign the waiver. (*Id.*; ECF 10-2 at 10). In his reply, Montgomery states he signed the waiver because Conley promised him a single cell assignment. (ECF 13 and 14). Montgomery further avers that, sometime between February 20, 2014 and March 24, 2014, he gave correctional officers Mac, Sweeney, and Myers letters stating that he feared for his safety and wanted protective custody. (ECF 14).

On April 14, 2014, pending investigation and consideration of whether Montgomery should be placed on voluntary or involuntary protective custody and transferred, Montgomery was placed on administrative segregation, a special housing status that involves greater security measures than general population, and transferred to the RCI in Hagerstown, Maryland. (*See* Status Report filed 5/5/14, ECF 23; Corresp. from plaintiff filed 4/29/14, ECF 20). As of May 4, 2014, Montgomery was housed at RCI in a cell by himself. (Corresp. from plaintiff filed 4/24/14, ECF 19; ECF 20). He has no listed enemies at RCI. According to the status report provided by counsel, if protective custody is offered to Montgomery, he will likely be transferred to the regional protective custody unit at the Maryland Correctional Institution in Hagerstown, Maryland. (ECF 23).

**STANDARD OF REVIEW**

Plaintiff was notified that defendants' substantive response will be treated as a motion for summary judgment under Fed. R. Civ. P. 56.  (*See* ECF 12).  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

A court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so.  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the

court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts

essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for

summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Plaintiff has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendant's motion as one for summary judgment, because consideration of the extraneous material will facilitate disposition of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).  The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *See Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied,* 541 U.S. 1042 (2004).  The court should view the evidence in the light most favorable to . . . the nonmovant, and draw all

inferences in her favor without weighing the evidence or assessing the witness' credibility. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the " 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## DISCUSSION

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689–90 (2008).  For injunctive relief to be granted, the claimant must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 19 (2008). All four requirements must be satisfied. *See Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir.2009), vacated on other grounds, 559 U.S. 1089 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

Montgomery acknowledges that he is presently housed in a single inmate cell, thus rendering his request for injunctive relief moot. Further, prison officials continue to investigate whether Montgomery should be placed on voluntary or involuntary protective custody and transferred for his safety.  Further, Montgomery has not been attacked or otherwise harmed at MCTC or at RCI.  Indeed, prison officials continue to evaluate how to house Montgomery safely

within the Maryland correctional system or elsewhere.  Under these facts, Montgomery fails to satisfy the requisites for preliminary injunctive relief.

To the extent that Montgomery wants to bring a "tort claim," based on an alleged delay between the time he alerted prison guards to his safety concerns and his removal to a single cell, he did not suffer any injury and  does not set forth a  cognizable claim. Thus,  Montgomery fails to show any genuine issue of material fact, and summary judgment will be entered in favor of defendants.

**CONCLUSION**

For these reasons, the court will deny emergency injunctive relief and grant summary judgment in favor of defendants. A separate Order follows.

May 13, 2014
Date

_____/s/_____
Ellen L. Hollander
United States District Judge